UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AUDREY ROSLYN CODLING and DWIGHT DEVON CODLING,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>KRISTJEN M. NIELSEN, EDWARD A. NEWMAN, and NIEVES CARDINALE,<br><br>*Defendants.* | Civil No. 3:17-cv-2082 (JBA)<br><br>February 13, 2019 |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs Audrey Codling and Dwight Codling bring this action challenging the United States Citizenship and Immigration Service's ("USCIS") denial of Audrey Codling's I-130 petition for alien relative for the benefit of Dwight Codling. USCIS found that Dwight Codling was barred from receiving this benefit under Section 204(c) of the Immigration and Nationality Act because he had entered into a prior sham marriage. The parties filed cross motions for summary judgment. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment ([Doc. # 19]), and denies Plaintiffs' Motion for Summary Judgment ([Doc. # 18]).

### I.     Background

Plaintiffs Audrey Codling and Dwight Codling were married on December 17, 2014 and filed the instant I-130 petition on February 3, 2015. (A.R. [Doc. # 13-6] 649.) USCIS denied the petition, finding that "the evidence of record contains substantial and probative evidence which establishes the beneficiary's [Dwight Codling] prior marriage with Lorraine Harriot was solely for

immigration benefits." (*Id.*) USCIS cited Harriot's August 5, 2015 statement to immigration officers that she and Dwight Codling had made up the story of how they met and how long they had known each other. (*Id.* 650.) Harriot told the immigration officers that she and Codling had hardly lived together and that she had a boyfriend during their marriage. (*Id.*) According to Harriot, the letters that she and her sister wrote in September 2013 in support of Codling's application for permanent residency based on the marriage were done at Codling's request, and Codling paid Harriot's sister to write her support letter. (*Id.*) Harriot stated that at the time her sister wrote the letter, her sister had never actually met Codling. (*Id.*) Harriot further stated that contrary to the testimony that she and Codling provided during his first I-130 interview, they had not in fact been residing together. (*Id.*) Finally, while Codling claimed in the first I-130 interview to have met Harriot in Jamaica, his native country, Harriot claimed that the two had actually met in the United States. (*Id.*)

USCIS concluded that insofar as Audrey Codling had submitted nothing to contradict or rebut the claims made by Harriot, Harriot's claims were truthful. (*Id.*) Crediting Harriot's statements, USCIS determined that Dwight Codling's marriage to Harriot was entered into for the primary purpose of obtaining immigration benefits, and accordingly, approval of the second, instant I-130 Petition was prohibited under INA 204(c). (*Id.*)

In its November 14, 2017 opinion, the Board of Immigration Appeals ("BIA") upheld the USCIS determination, finding that "there is substantial and probative evidence tending to show that the beneficiary's prior marriage was entered into for the specific purpose of evading the immigration laws." (*Id.* 593.) The BIA specifically noted that "[i]n so doing, we do not rely conclusively on any finding in a past proceedings, nor do we find that the [USCIS] Director did so." (*Id.*) Further, the BIA stated "we agree with the Director's observation in his decision, that

very little documentary evidence to establish the bona fides of the beneficiary's former marriage has been submitted in response to the substantial evidence of fraud." (*Id.*)

Plaintiffs characterize the evidence in the administrative record as all demonstrating that at the time Mr. Codling and his ex-spouse were married, "they intended to establish a life together" and that "[i]t was only after [] they married that their relationship deteriorated and they gradually began making separate lives." (Pls.' Mot. Summ. J. [Doc. # 18-1] at 7.) Plaintiffs do not cite what evidence in the record specifically supports this characterization.

Plaintiffs also note that "[e]ven though [Mr. Codling's] prior spouse admitted providing false testimony and false documents to support his original I-130 Petition for approval of his 2 year conditional status, she never testified that she did not have a bona fide relationship with [him] or that she conspired with [him] to enter into the marriage to evade immigration laws." (*Id.* at 9.) According to Plaintiffs, "[t]o the contrary, although the former spouse was extremely upset with [Mr. Codling] and [] willing to have him deported when she provided her statements to the immigration officers, she did not claim that the parties' marriage was fraudulent . . . ." (*Id.* at 9-10.) The former spouse, according to Plaintiffs, "did not claim that she was paid to marry [Mr. Codling], that they did not have an intimate relationship, or that they did not live together following their marriage." (*Id.* at 10.) Finally, Plaintiffs contend, "not only were facts of this nature absent from her testimony, [] she actually testified that she married [Mr. Codling] because she had loved him." (*Id.* at 10.)

Plaintiffs concede that Mr. Codling "lied about certain facts pertaining to meeting his former wife" but contend that "there is nothing in the record evidencing that he lied for the purpose of concealing that they entered into sham marriage[.]" (*Id.* at 10-11.)

*Previous and Parallel Procedural History*

After Mr. Codling and Harriot married on February 10, 2008, Harriot filed an I-130 Petition on his behalf on February 6, 2009. (A.R. 139.) USCIS approved the I-130 and Codling obtained conditional permanent residence status. (*Id.*) On June 30, 2011, Codling and Harriot jointly filed Form I-751 Petition to Remove Conditions with USCIS. (*Id.* 59.) But on August 30, 2012, Harriot did not appear at USCIS for the interview on the I-751. (*Id.* 4.) Thereafter, on January 9, 2013, the I-751 was denied and Codling's conditional permanent residence status was terminated. (*Id.* 4, 59.)

On February 11, 2013, Codling, through counsel, filed a second I-751 Petition, this time seeking a "good faith waiver." (*Id.* 14.) In this second filing, Codling acknowledged that he was divorced from Harriot but asserted he was still entitled to have the conditions of his permanent residence status removed because he entered into the marriage in good faith. (*Id.*) On April 1, 2014, USCIS denied the I-751 Petition on the ground that Codling failed to show that he married Harriot in good faith and that rather the evidence showed that he married her for the purpose of evading the immigration laws. (*Id.* 8-12.)

After the denial of Codling's first I-751 petition and the termination of his conditional permanent residence status, the Department of Homeland Security believed that he no longer had a legal basis for his presence in the United States. (*Id.* 4.) Accordingly, on May 21, 2013, Codling was served with a Notice to Appear for removal proceedings in Immigration Court. (*Id.* 2-3.) Codling obtained a one-year continuance of the removal proceeding so that he could pursue the second I-751 (seeking a good-faith waiver). (*Id.* 228-30.) After failing to obtain the good-faith waiver from USCIS, Codling sought the same relief from the Immigration Court. An evidentiary hearing was held on September 8, 2015, and September 29, 2015, at which Codling and Harriot

4

both testified. (*Id.* 239-561.) Although the Immigration Court proceeding is distinct from USCIS'

processing of the I-130, the transcript of the hearing is part of the record in this case. On September

29, 2015, Immigration Judge Michael W. Straus ordered Codling removed to Jamaica. (*Id.* 204-

221.) In his decision, the judge concluded that Codling had not carried his burden to show that his

first marriage was bona fide, that Codling was not a credible witness, and that the number of

documents offered to show a *bona fide* marriage was "sparse." (*Id.* 216-19.) Codling's removal is

not at issue in this litigation and is currently on appeal before the BIA.

## II.    Discussion

### 1.    *Legal Standard*

Under the Administrative Procedure Act ("APA"), "final agency action[s] for which there

is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The review

is based on the "whole record or those parts of it cited by a party . . . ." *Id.* § 706. The parties agree

that the arbitrary and capricious standard applies to judicial review of this action. *See also Simko*

*v. Bd. of Immigration Appeals*, 156 F. Supp. 3d 300, 308 (D. Conn. 2015) (applying arbitrary and

capricious standard in review of BIA decision upholding denial of I-130 petition based on 204(c)

marriage bar). The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside

agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). The "scope of review

under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment

for that of the agency . . . ." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 30 (1983). "[A]n agency determination will only be overturned when the agency 'has

relied on factors which Congress has not intended it to consider, entirely failed to consider an

important aspect of the problem, offered an explanation for its decision that runs counter to the

evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Karpova v. Snow*, 497 F.3d 262, 267–68 (2d Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43). "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Id.*

### 2. *Denial of the I-130 Petition*

"Section 204(c) of the [Immigration and Nationality] Act, 8 U.S.C. § 1154(c), prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." *Matter of Tawfik*, 20 I. & N. Dec. 166, 167 (BIA 1990). "As a basis for the denial it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy[,]" but "the evidence of such attempt or conspiracy must be documented in the alien's file and must be substantial and probative." *Id.* (citations omitted). "In making that adjudication, the district director may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage." *Id.* at 168. "Ordinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him." *Id.* Finally, a mere "reasonable inference" from the record that "a beneficiary entered into a marriage for the primary purpose of obtaining immigration benefits" "does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition" under Section 204(c). *Id.*

At core, Plaintiffs argue that none of the evidence relied upon by the USCIS and the BIA *directly* proves that Mr. Codling was part of a sham marriage, and that the conclusion that his marriage was fraudulent requires making inferential leaps that are prohibited under *Matter of Tawfik*'s holding that reasonable inferences from the facts contained in the records alone do not rise to the requisite level of "substantial and probative evidence." (Pls.' Mot. Summ. J. at 7 (citing 20 I&N Dec. 166 (BIA 1990).)

Plaintiffs also argue that USCIS cannot here rely on any prior findings suggesting that Mr. Codling engaged in a sham marriage, because the prior findings in this case were never sustained in immigration court proceedings under the clear and convincing evidence standard. (*Id.* at 8.) As Plaintiffs note, the administrative findings here do not involve factual determinations based on the clear and convincing evidence standard. (*Id.* (citing *Matter of Agdinaoay*, 16 I. & N. Dec. 545, 547 (BIA 1978)).) Plaintiffs are correct as a matter of law that the BIA cannot rely on the findings made in the prior administrative proceedings in this case, but this argument is inapposite here where the BIA made clear that it did not rely conclusively on the fact of any previous findings but only on the evidence considered as part of those proceedings.

Plaintiffs further argue that "[n]o affirmative determination or finding has previously been made by the Immigration Judge or the BIA in [Mr. Codling's] removal case." (*Id.*) Plaintiffs contend that "[w]hile the IJ did previously deny [Mr. Codling's] application for a waiver of the joint filing requirement in connection with his prior marriage, the IJ did not do so because he . . . affirmatively f[ou]nd the marriage to be fraudulent" but "merely concluded [that Mr. Codling] had failed to meet his requisite burden of proof in connection with obtaining the I-751 waiver." (*Id.* (citing A.R. 219).) Again, Plaintiffs are correct as a matter of law, but nothing in the record or

the BIA's decision suggests that the BIA in this case relied on *findings* made in Mr. Codling's removal case.

Finally, Plaintiffs argue that even though Harriot admitted providing false testimony and false documents to support Mr. Codling's original I-130 Petition for approval of his 2-year conditional status, "she never testified that she did not have a bona fide relationship with [Mr. Codling] or that she conspired with [him] to enter into the marriage to evade immigration laws." (*Id.* at 9.) Plaintiffs similarly argue that although the IJ found that Mr. Codling and his ex-spouse had misrepresented how and where they had met, this "in and of itself does not mean that they had a sham marriage." (*Id.* at 10.)

At oral argument, the Court asked Plaintiffs which parts of the record specifically they relied on in asserting that the BIA acted arbitrarily and capriciously. Plaintiffs' counsel answered that the only evidence of a sham marriage was Ms. Harriot's testimony, and that the BIA had erred in according credibility to this testimony given its internal contradictions.

The Court agrees with Plaintiffs that given the USCIS's burden of establishing the applicability of the 204(c) bar, Ms. Harriot's testimony alone would be insufficient to establish that the prior marriage was a sham. But the record reflects more than just the testimony of Mr. Codling's former spouse standing alone. Mr. Codling himself (1) admitted that he and Ms. Harriot had lied in their I-130 interview and how and when they met, (2) could not explain why he had signed immigration documents indicating that he moved to the marital address in September 2007 when he had not in fact moved there until March 2008, and (3) admitted that Ms. Harriot had written the letter of support purportedly written by her sister. (A.R. 312, 316.) All of these admissions and gaps in Mr. Codling's narrative do not themselves constitute substantial and probative evidence of marriage fraud—since after all, a marriage could be bona fide and the

8

spouses nonetheless lie in an inadvisable attempt to "show" the bona fides—but they do provide a reasonable basis for the BIA to doubt Mr. Codling's credibility, and for the BIA to credit Ms. Harriot's testimony, insofar as these admissions provide corroboration for key parts of that testimony.

"[W]here there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." *Matter of Kahy*, 19 I. & N. Dec. 803, 806–07 (BIA 1988). Under the deferential standard of review applicable in this case, the Court cannot say that the BIA's finding that there was evidence in the record indicating a sham marriage was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). The BIA did not act in violation of the APA, in other words, in determining that the evidence in the record sufficed to shift the burden to Plaintiffs to rebut the evidence of fraud. And while the initial burden here rested with USCIS and the BIA, Plaintiffs direct the Court to nothing in the record that could satisfy Plaintiffs' burden to rebut the evidence of marriage fraud. The Court's review of the record has similarly uncovered no such evidence. Moreover, nothing in the record suggests that the BIA decision "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Karpova*, 497 F.3d at 267–68 (internal quotation marks and citation omitted).

## III. Conclusion

For the reasons set forth above, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment. Plaintiffs' appeal from this agency action is dismissed, and the Clerk is directed to close the case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of February 2019.